Gilbert, J.
I wish it was in my power to aid the plaintiffs’ counsel ill their efforts to take away from our law, respecting the marriage contract, the reproach imputed to it. But that task belongs to the legislature, and not to the judiciary. As the law stands, a valid marriage, to all intents and purposes, is established by proof of an actual contract, per nerba de prcesenti, between persons of opposite sexes, capable of contracting, to take each other for husband and wife, especially where the contract is followed by cohabitation. No solemnization, or other formality, apart from .the agreement itself, is necessary (Clayton v. Wardell, 4 N. Y. [4 Comst.], 230; Cheney v. Arnold, 15 N. Y., 345; Caujolle v. Ferrie, 23 Id., 106, and cases cited; see, also, Hubbuch on Successions, c. 4, § 1).
Nor is it essential to the validity of the contract that *8 'it should be made before a witness. This was held in so many words by Bradford, Surrogate, in Tummalty v. Tummalty (3 Bradf., 372).
A written instrument, being such contract, is, of course, admissible and proper evidence. Thus, in England, the original -contract "is deemed the proper evidence of a Jewish marriage (Horn v. Noel, 1 Campb., 61); and letters or other written declarations or acknowledgments, expressive of the requisite consent, are at least evidence of, if they do not, proprio vigore, constitute marriage (Dalrymple v. Dalrymple, 2 Hagg. C. R., 59). Before the change in the law, whereby parties to suits are permitted to testify in their own behalf, the actual making of a contract resting in parol might not be susceptible of proof; but this did not render it invalid or inoperative, for it might still be established by circumstantial- evidence (authorities supra).
I am, therefore, unable to perceive any error in the charge to the jury on this subject.
It is urged, however, that it being part of the agreement proved in this_case, that the marriage should at some time thereafter be solemnized in church, the same was void, because the contract, per verba de prcesenti, constitutes marriage only when the parties intend that it should do so without any subsequent ceremony.
This rule of law is probably correct, for the reason stated by Lord Campbell in Queen v. Willis (10 Cl. & F., 534), that “it.is easy to conceive that parties might contract per verba de prcesenti, without meaning instantly to become man and wifeand it was with reference to this principle that the court, upon a request of the counsel for the plaintiffs, instructed the jury to find that “if a proposal of marriage was made by Mr. Taylor—if he understood it as a proposal of marriage, 'and it was so understood by her, and she accepted that proposal, it was a valid contract of marriage.” If, on the other hand, as is contended on the part of the plaintiffs, this was a proposition to cohabit as man and wife, with an assurance of a future mar *9 riage, it would be a nullity. The law requires an actual meeting of the minds of the parties upon that question,—namely, that they shall thenceforth, from the time of making the agreement, be husband and wife.” The point was fairly met, and, upon the evidence, was one for the jury to determine.
The contract of marriage was proved by Mrs. Taylor alone. Was she a competent witness? The rule invoked by counsel, excluding the testimony of the wife, of her husband’s declarations to her during the marriage relation, has ho application to words spoken at the very time of forming the marriage. That rule rests upon public policy, which invests communications between husband and wife during the marriage with a confidential character (Chamberlain v. People, 23 N. Y., 89).
The objection to the witness was placed upon the ground of her incompetency generally. She was admitted as a witness only in behalf of her children, to prove their legitimacy. This was excepted to, but no objection to any specific portions of her testimony was taken, nor was any point made as to the effect which should be given to her testimony in favor of or against any parties other than her children.
There can be no doubt that by the common law she iras a competent witness either to bastardize the issue <f the supposed marriage, or to establish its legitimacy (Rex v. Bramley, 6 T. R., 330; Groodright v. Moss, Cowp., 593). In the last case Lord Mansfield said, in reference to the competency of the parents, “I should as soon have expected, to hear it disputed whether the attesting witness to a bond could be admitted to prove the bond,” and he mentions a case where a mother was allowed to prove a clandestine marriage at the Fleet. No other evidence was given to show the legitimacy of the child, and a great estate was recovered upon her single testimony. By the enactment of the Code, the legislature certainly did not intend to abrogate or to restrict this '.rule. They ;removed all disqualification *10 on the ground of interest (section 389).. They then allowed the examination of a party on behalf of a co-party as to any matter in which he is not jointly interested with such coparty (section 397). The matter as to which Mrs. Taylor testified was the legitimacy of her children, the marriage being only a link in the chain of evidence to establish that fact. Surely she was not, in a legal sense, interested with her children jointly in that matter. The language of section 399 is a little obscure, but I cannot think that the legislature intended to exclude testimony in a partition suit, in favor of one set of heirs, because it might operate against another set. i The enacting clause of this statute is general. The exception is of an examination of a party against an heir at law, when the examination or judgment in the action can affect the interest of the witness. I ;do not think that the testimony of one tenant in common in a partition suit ought to be regarded as being against a cotenant within the meaning of this section. The fair construction of it is, that when adverse rights by succession are involved, one litigant shall not testify to a transaction with the deceased predecessor in title, invalidating or impairing the right or title of the other. In this case, too, the interests of the parties are separate and distinct. • In ejectment by one heir of the deceased’ Mr. Taylor against another heir, the testimony of Mrs.. Taylor as to transactions with her husband, would have been competent. Her competency ought not to be affected by making her a party to a suit like this, where the same question is involved. Such a construction would put it in the power of any person, by bringing a partition suit, to deprive his adversary of testimony admissible in itself, on the mere ground that the witness is a nominal party to the suit, although not legally in-' terested in the subject matter thereof. A suit in parti- ¡ tion is based upon the fact that all the parties to it have 1 undivided, but divisible, interests in the subject thereof, the end sought being a division merely. Where it is sought to embrace in such a suit, the elements of *11 an action of ejectment, or of a writ of right, especially where, as in this case, special issues have been framed for the trial of the latter, the legal rights of the parties in relation to this subject, can be protected only by giving this section of the Code a corresponding construction, and by treating those averments which raise contestation upon the legal title, and the issues framed thereupon, as in legal effect a separate proceeding, within themeaning of section 399 of the Code. And this is in accordance with the rule that a proviso is construed strictly. It “carries special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words as well as within the reason thereof ” (Per Story, J., United States v. Dickson, 15 Pet., 165).
The only remaining question is, whether the exclusion of the declarations of Mr. Taylor, made in promiscuous conversations, having no reference to his relations with Mrs. Taylor, that he was not a married man, was erroneous. Such declarations do not come within the rule relating to hearsay on the subject of pedigree, for none of them were spoken with reference to the status of Mrs. Taylor or her .'children. For the same reason, they are not admissible as part of the res gestes. To be admissible on the latter ground, they must be connected with the act or transaction in controversy. None of the cases cited by the plaintiffs’ counsel furnish an exception to the rule. In those from the surrogate’s court, the declarations were of a character, or made under circumstances clearly indicating that they related to the individual whose status was in controversy; In Clayton v. Wardell (4 N. Y. [4 Comst.], 230), and Matter of Taylor (9 Paige, 611), the rule stated was clearly announced ; and in Jewell v. Jewell (1 How. U. S., 119), the supreme court of the United States recognized and applied the same principle.
If the foregoing views are correct, no error was committed upon the trial, and I see no reasonable ground for complaining of the verdict. So far from being *12 against the weight of evidence, it is fully supported thereby. Although the court might not have given full credence to the testimony on which it rests, or have come to a different conclusion from that of the jury upon other grounds, that, in my judgment, affords no proper reason for disturbing the verdict. It must appear that a fair trial has not been had, or that errors have been committed by the court or jury, affording a reasonable doubt as to the justice of the result (Forrest v. Forrest, 25 N. Y., 510). Where the evidence so strongly preponderates as to justify only one conclusion, it is the duty of the court, on the trial of special issues, to instruct the jury as to the posture of the case upon the evidence_(Mountain v. Bennett, 1 Cox, 353). Where the evidence is such as to render such a course improper, but the case is one peculiarly within the province of a jury to determine, it is equally the duty of the court to submit the whole case to them, and to abstain from any interference with their verdict honestly given. Such was this case. To send it back for a new trial would be contrary to a due administration of justice, by unwarrantably prolonging a controversy, which it is the right of the parties and the interest of the public to have' terminated;
The motion for a new trial must be denied, and judgment upon', the verdict must be entered declaring the rights of the parties, and referring it to John W. Mills, Esq., to take proof of title, incumbrances, &c.
A clause may also be inserted, appointing Calvin E. Pratt receiver, upon his giving the security, and subject, to the directions verbally stated by -me.